**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNIFIED DATA SERVICES, LLC; COMPLIANCE CONSULTANTS, LLC; AMERICAN TECHNOLOGY SERVICES, LLC; RICHARD ZEITLIN, *Plaintiffs-Appellants*, <br><br> v. <br><br> FEDERAL TRADE COMMISSION, *Defendant-Appellee.* | No. 20-16128 <br><br> D.C. No. 2:19-cv-00698-JCM-VCF <br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted January 13, 2022
Pasadena, California

Filed July 13, 2022

Before: Richard R. Clifton and Milan D. Smith, Jr., Circuit
Judges, and Stephen Joseph Murphy III,* District Judge.

---

* The Honorable Stephen Joseph Murphy III, United States District
Judge for the Eastern District of Michigan, sitting by designation.

Opinion by Judge Clifton;
Partial Concurrence and Partial Dissent by
Judge Milan D. Smith, Jr.

---

**SUMMARY**[**]

---

**Appellate Jurisdiction / Standing**

The panel affirmed the district court's dismissal for lack of subject matter jurisdiction of plaintiffs' complaint against the Federal Trade Commission ("FTC"), based on plaintiffs' failure to adequately plead Article III standing.

Plaintiffs, an individual and his telemarketing companies, sued the FTC over its alleged prohibition of most uses in telemarketing of soundboard technology.

The panel rejected the FTC's contention that the district court's order was not final and appealable. The panel held that there was appellate jurisdiction based on the principles set forth in *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc), and subsequent precedents. The panel concluded that, based on the whole record – including the failure to grant leave to amend and the clerk's immediate entry of final judgment – the district court's dismissal was final.

The panel agreed with the district court that plaintiffs failed to plead facts establishing an injury in fact for

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

purposes of standing under Article III of the Constitution. The panel held that the complaint provided virtually no information about plaintiffs' use or concrete plans to use soundboard technology in a manner that contravened FTC regulations, nor did it offer any indication that the threat of FTC enforcement against them was credible or imminent.

Judge M. Smith concurred in part and dissented in part. He agreed with the majority that, as the complaint stood, plaintiffs lacked Article III standing to bring this pre-enforcement challenge because they did not allege that they have a concrete intention to engage in conduct that was prohibited by the FTC staff's interpretation of the Telemarketing Sales Rule in its 2016 opinion letter. He disagreed with the majority because he would remand with instructions for the district court to grant plaintiffs leave to amend. The district court abused its discretion because it expressly acknowledged that "the defect in plaintiffs' complaint may be cured by amendment," but then nevertheless denied leave to amend without offering any justification.

## COUNSEL

Thomas Kimble (argued) and Robert Bernhoft, Bernhoft Law Firm S.C., Austin, Texas; for Plaintiffs-Appellants.

Bradley Dax Grossman (argued), Attorney; Joel Marcus, Deputy General Counsel; James Reilly Dolan, Acting General Counsel; Federal Trade Commission, Washington, D.C.; Christopher Chou, Acting United States Attorney; Brian W. Irvin, Assistant United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Defendant-Appellee.

## OPINION

CLIFTON, Circuit Judge:

This appeal arises from the dismissal of a complaint against the Federal Trade Commission ("FTC"). Plaintiffs, an individual and his telemarketing companies, sued the FTC over its alleged prohibition of most uses in telemarketing of soundboard technology, a product described as allowing a live call center agent to simulate a natural conversation by dispatching prerecorded messages in response to comments by the person who was called.

This case first requires us to consider our appellate jurisdiction. The district court dismissed Plaintiffs' complaint without prejudice for want of subject matter jurisdiction based on Plaintiffs' lack of standing. The court recognized that amending the complaint might not be futile, but it did not grant leave to amend the complaint. The FTC contends that the district court's order was not final and appealable. We disagree. We have appellate jurisdiction based on the principles set forth in *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc), and subsequent precedents, because we conclude, based on the whole record, that the district court's dismissal was final.

We next agree with the district court that Plaintiffs have failed to plead facts establishing an injury in fact for purposes of standing under Article III of the Constitution. The complaint provided virtually no information about Plaintiffs' use or concrete plans to use soundboard technology in a manner that contravenes FTC regulations, nor did it offer any indication that the threat of FTC enforcement against them was credible or imminent. We thus affirm the district court's dismissal for lack of subject matter jurisdiction.

## I. Background

The Telemarketing and Consumer Fraud and Abuse Prevention Act requires the FTC to "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices." 15 U.S.C. § 6102(a)(1). Pursuant to that authority, the FTC promulgated the Telemarketing Sales Rule (hereinafter, "the Rule"). In 2008, the FTC amended the Rule to prohibit unsolicited robocalling in the form of "any outbound telephone call that delivers a prerecorded message," by telemarketers without prior consent from the consumer. 16 C.F.R. § 310.4(b)(1)(v); *see* Telemarketing Sales Rule, 73 Fed. Reg. 51,164, 51,184–85 (Aug. 29, 2008). The Rule makes an exception for calls made to "induce a charitable contribution from a member of, or previous donor to, a non-profit charitable organization," which may use prerecorded messages without prior consent subject to certain constraints, such as permitting the recipient to opt out in the future. 16 C.F.R. § 310.4(b)(1)(v)(B).

Plaintiffs, identified in the complaint as "Richard Zeitlin and his associated companies," Unified Data Services, LLC, Compliance Consultants, LLC, and American Technology Services, LLC, sued the FTC over the application of this scheme to soundboard technology. According to the complaint, the allegations in which we take as true for purposes of this appeal, soundboard technology "works by allowing highly trained and skilled call center agents to interact and converse with consumers on a real-time basis using recorded sound files." With soundboard, a call center agent, who remains active on the call and has the ability to intervene with his or her own voice if necessary, can "select[] and substitute[] appropriate audio clips . . . in such a way that the consumer experiences a natural conversation."

In 2009, Michael Bills, the CEO of Call Assistant, a marketing firm in Utah using soundboard and not a party to the action before us, sought an opinion from FTC staff regarding the use of soundboard technology in telemarketing. *See* 16 C.F.R. 1.3(a) (permitting the FTC or its staff to issue advisory opinions). In response, FTC staff issued an advisory letter that concluded that soundboard, as the use of the technology was described by Bills in his request, did not violate the Rule's robocalling restrictions.

But in 2016, FTC staff changed course.[1] Based on "evidence of the widespread use of soundboard technology in a manner that does not represent a normal, continuous, two-way conversation between the call recipient and a live person," FTC staff determined in a subsequent advisory letter that using soundboard indeed constituted prohibited robocalling.[2] The 2016 letter concluded that it was "indisputable" that soundboard technology, which "delivers a prerecorded message" under 16 C.F.R. § 310.4(b)(1)(v), fell within the plain language of the Rule. The letter further stated, "Given the actual language used in the [Rule], the increasing volume of consumer complaints, and all the

---

[1] Both the 2009 and 2016 letters are available on the FTC's website. FTC, Staff Opinion Letter (Sept. 11, 2009), *available* at https://bit.ly/3tHTd1S [https://perma.cc/5APL-5GT3]; FTC, Staff Opinion Letter (Nov. 10, 2016), *available at* https://bit.ly/34CML3M [https://perma.cc/FEY7-7UZM].

[2] The 2016 letter was also the subject of litigation in the D.C. Circuit brought by a soundboard industry group. *See generally Soundboard Ass'n v. FTC*, 888 F.3d 1261 (D.C. Cir. 2018). That court held that the 2016 letter was not final, reviewable agency action. *Id.* at 1267–68. Here, the FTC argues that the lack of finality independently warranted dismissal of the complaint. But because the district court ruled on standing grounds and because we agree that Plaintiffs lack standing, *Soundboard Association* does not impact our analysis.

abuses we have seen since we issued the September 2009 letter, we have decided to revoke the September 2009 letter," giving telemarketing industry members six months to "bring themselves into compliance" with the new guidance.[3]

Plaintiffs sued the FTC in response to the 2016 letter. They brought six counts under the Administrative Procedure Act ("APA") and the First Amendment, and Plaintiffs sought various forms of declaratory and injunctive relief. Among other things, they asked for a declaration that the 2016 letter impermissibly restricts protected speech, vacatur of the 2016 letter, a declaration that the 2009 letter "remains in full force and effect," and an injunction barring the FTC from enforcing the Rule against soundboard users.

The complaint contains little information about Plaintiffs or how Plaintiffs themselves use soundboard technology. From what is explicit or implicit in the complaint, Zeitlin owns the corporate plaintiffs, and Plaintiffs together are members of "the telemarketing sales industry." Plaintiffs have "nonprofit clients" who may be subject to the Rule's special provisions for charitable calls. Plaintiffs allege that they are among those "Soundboard users" who face "serious civil penalties for failure to comply with the new rule" set forth in the 2016 letter. Plaintiffs allege that they, "together with many others, have invested millions of dollars and spent countless hours in training and development to implement Soundboard technology and its concomitant business model." The 2016 letter, they allege, renders the industry

---

[3] Both the 2009 letter and the 2016 letter advised that they expressed only the views of FTC staff and did not bind the Commission itself. *See* 16 C.F.R. § 1.3(c) ("Advice rendered by the staff is without prejudice to the right of the Commission later to rescind the advice and, where appropriate, to commence an enforcement proceeding.").

"whipsawed between abandoning its business and laying off thousands of workers to whom they have paid good salaries for years and facing potentially ruinous enforcement actions and penalties."

The FTC moved to dismiss the complaint on several grounds, only one of which we need to discuss here. The FTC argued that the district court lacked subject matter jurisdiction because the complaint failed to allege a sufficient injury in fact suffered by Plaintiffs for standing purposes under Article III.

The district court agreed. It granted the motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) on standing grounds because "plaintiffs have failed to show the 'when, to whom, where, or under what circumstances' of the FTC's purported enforcement and, consequently, have not established a credible threat of enforcement." The order concluded, "However, the defect in plaintiffs' complaint may be cured by amendment, so the court dismisses plaintiffs' claims without prejudice."[4] Despite this observation, the district court did not grant Plaintiffs leave to amend their complaint. On the same day the order was filed, the clerk of the district court entered judgment "in

---

[4] We take that observation by the district court as acknowledging a possibility, not making a specific determination, that Plaintiffs would actually satisfy the requirements for standing, as discussed below, by alleging more details. The district court did not know at that point what Plaintiffs could allege about their situation, their use of soundboard technology, and the threat of FTC enforcement action against them. In case it might matter in the future, we make clear that we have not concluded that Plaintiffs would actually be able to satisfy the requirements for standing with an amended complaint. That question could not be answered until a revised complaint is offered and could be considered.

favor of the Defendant and against the Plaintiffs without prejudice." Plaintiffs appealed.

## II. Appellate Jurisdiction

We begin with our jurisdiction. *See In re Application for Exemption from Elec. Pub. Access Fees by Jennifer Gollan & Shane Shifflett*, 728 F.3d 1033, 1036 (9th Cir. 2013) ("The question of appellate jurisdiction must always be resolved before the merits of an appeal are examined or addressed." (quotation marks and citation omitted)). "Pursuant to 28 U.S.C. § 1291, we only have appellate jurisdiction over 'final decisions' of district courts." *Van Dusen v. Swift Transp. Co. Inc.*, 830 F.3d 893, 896 (9th Cir. 2016).

The district court's order dismissed the complaint without prejudice and acknowledged that amendment may not be futile. The FTC contends that this appeal must be dismissed for want for appellate jurisdiction because, it says, such an order is not final under 28 U.S.C. § 1291.

We disagree. We have appellate jurisdiction because, looking at the record as a whole, "the district court intended its order to end the case." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 983 (9th Cir. 2000). Despite acknowledging that amendment of the complaint might not be futile, the district court did not grant leave to amend. That omission, combined with the district court clerk's entry of judgment on the same day, demonstrates that the dismissal order was final and appealable.

In *WMX Technologies*, an en banc panel of this court considered whether a dismissal without prejudice and with leave to amend constituted a final, appealable order. We held that it did not. *WMX Techs.*, 104 F.3d at 1135. In that case, the district court granted a motion to dismiss under Rule

12(b)(6) without prejudice but ordered that "Plaintiffs may further amend as to [two of their] claims for relief," giving them thirty days to do so. *Id.* at 1134. The district court then issued a "judgment" that likewise explicitly permitted amendment by a particular date. *Id.*

When Plaintiffs appealed that judgment without amending their complaint, we held that we lacked appellate jurisdiction. *Id.* at 1135. The district court "did not direct 'that all relief be denied' but left the suit pending for further proceedings." *Id.* (quoting *Jung v. K. & D. Mining Co.*, 356 U.S. 335, 336–37 (1958)). *WMX Technologies* reaffirmed that a plaintiff given leave to amend must affirmatively alert the district court that it intends to rest on its complaint as pleaded before an appeal may be taken:

> Unless a plaintiff files in writing a notice of intent not to file an amended complaint, such dismissal order is not an appealable final decision. In a typical case, filing of such notice gives the district court an opportunity to reconsider, if appropriate, but more importantly, to enter an order dismissing the action, one that is clearly appealable.

*Id.* at 1135–36 (quoting *Lopez v. City of Needles*, 95 F.3d 20, 22 (9th Cir. 1996)).

*WMX Technologies* also recognized that "construction difficulties" can arise "when a complaint is simply dismissed without prejudice":

> Absent further explicit illumination from the district court, we may have to determine from the whole record whether it was contemplated that the dismissal was for lack

of jurisdiction, whether further amendment was anticipated, whether the district court made it plain that there could be no further amendment, or whether it was contemplated that the whole action was dismissed on the merits.

*Id.* at 1136. "However, when a district court expressly grants leave to amend, it *is* plain that the order is not final." *Id.* at 1136–37.

Here, we are faced with an ambiguous order dismissing the complaint without prejudice. We therefore must consider the "whole record," *WMX Techs.*, 104 F.3d at 1136, to determine whether the district court "intended the dismissal order to end the case." *Knevelbaard Dairies*, 232 F.3d at 983. We conclude it did.

First, the district court clerk here entered judgment on the same day that the court granted the motion to dismiss. We recognize, as the FTC argues, that the clerk's "commitment of the judgment to writing, . . . as well as the filing, entry, and recordation of the judgment, are ministerial acts." *Lockwood v. Wolf Corp.*, 629 F.2d 603, 608 n.2 (9th Cir. 1980). But ministerial does not necessarily mean inconsequential. *See* Fed. R. Civ. P. 58(a) ("Every judgment and amended judgment must be set out in a separate document . . . ."); Fed. R. Civ. P. 58(b)(1)(C) ("[U]nless the court orders otherwise, the clerk must, without awaiting the court's direction, promptly prepare, sign, and enter the judgment when . . . the court denies all relief."); Fed. R. App. P. 4(a) (entry of judgment triggers time to file notice of appeal). We have long considered the clerk's understanding that the court disposed of a case to be "probative" of finality. *Knevelbaard Dairies*, 232 F.3d at 983; *Cooper*, 704 F.3d

at 777 (explaining that "the clerk's definitive termination of the case" is "instructive" as to whether "the court considered the case closed"). The entry of judgment on the same day as the order of dismissal demonstrates that the district court intended its order to be final.[5]

Second, the district court did not expressly grant leave to amend, and "[f]ailure to allow leave to amend supports an inference that the district court intended to make the order final." *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1514 (9th Cir. 1987). "It is not uncommon for courts to frame a jurisdictional dismissal as being 'without prejudice' because the merits have not been considered." *Cooper*, 704 F.3d at 777. Thus, the district court's acknowledgment of the possibility of amendment "do[es] not overcome the inference that the district court . . . intended to finally dispose of the action." *Id.* at 776.

Plaintiffs contend that the district court's order in this case is analogous to the order considered in *Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012). In *Cooper*, the district court dismissed a § 1983 complaint "without prejudice, to the extent that Plaintiff is able to plead viable claims that are not barred by *Rooker-Feldman*."[6] *Id.* at 776. We observed that "the [district] court neither granted nor denied [the

---

[5] As dismissal was without prejudice, Plaintiffs could have initiated a new action with a revised complaint. At oral argument, they told us that they had not yet done so, though more than 21 months had passed.

[6] "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

plaintiff's] request for leave to amend." *Id.* We concluded, however, that the district court had effectively denied leave to amend because its rationale on the merits "strongly suggest[ed]" the district court had rejected the viability of amendment. *Id.* at 777. Here, by contrast, when the district court dismissed the complaint without prejudice, it explicitly recognized that "the defect in plaintiffs' complaint may be cured by amendment." In other words, the district court recognized in no uncertain terms that amendment might not be futile. We therefore disagree with Plaintiffs that the district court in substance concluded that amendment could not cure any defects. That argument is belied by the plain text of the order.

At the same time, we disagree with the FTC's argument that the district court's acknowledgment of the possibility of amendment means that leave to amend was granted and that we should simply apply the rule from *WMX Technologies*. The district court's order was silent on leave to amend. And unlike in *Cooper*, in which we gleaned that a request for leave was denied from the substance of the order even in the face of the district court's silence, Plaintiffs never sought leave to amend at the district court. At most, Plaintiffs referenced amendment obliquely in their responsive brief, but did so only in reference to dismissal with prejudice: "Finally, any defect in this regard, whether real or imagined, could easily be corrected by filing an amended complaint and could hardly justify a dismissal *with prejudice*" (emphasis added). By the terms of its order, the district court here seemed to do as Plaintiffs asked. As amendment might be viable, the court dismissed the complaint without prejudice, but no leave to amend was granted in this action. This case, therefore, is not squarely controlled by the result in *WMX Technologies*, and we conclude the district court intended its order to finally dispose of the case.

We acknowledge, of course, that we have repeatedly instructed that leave to amend should be given, even sua sponte, if amendment could cure a pleading defect. *See, e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) ("A district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (brackets and citation omitted)). Nevertheless, the district court's recognition that amendment might not be futile does not equate to an actual grant of leave to amend.

We decline to remand with instructions to allow leave for amend. Plaintiffs have waived the argument on appeal that they are entitled to such relief from this court. Their opening brief does not "argue[] specifically and distinctly" that we should remand this case with instructions to grant leave to amend, even as relief in the alternative. *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010) (citation omitted). Instead, Plaintiffs have repeatedly insisted that their complaint was sufficient as pleaded and only asked us to reverse the district court.[7]

---

[7] The opening brief contains, at most, the following language: "Appellants contend that their original complaint meets the constitutional standing requirements in its present form. To the extent that this Court disagrees, Appellants respectfully request that the Court find there are no fatal pleading defects and *allow Appellants to correct any technical pleading defects upon remand*." This oblique reference to remanding for leave to amend (to cure what Plaintiffs mischaracterize as "technical pleading defects"), however, comes amidst a section focused entirely on remand *for the addition of an entirely new claim*. And the reply brief—after the FTC squarely addressed the question of jurisdiction and amendment—again insisted that its complaint sufficed as-is, asking only for us to reverse. This court has "refused to address claims that were only argued in passing or that were bare assertions with no supporting argument." *Christian Legal Soc.*, 626 F.3d at 487

We are unpersuaded by the dissent's arguments about judicial economy. It is true that sometimes, requiring the parties to file a new action "*could* undermine the goal of judicial economy." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (emphasis added). Here, given that dismissal was without prejudice, but Plaintiffs have yet to file a new action with a revised complaint, *see supra* note 5, and given that Plaintiffs have made no attempt in this court or below to explain what their added allegations would be, we harbor serious doubts that they can adequately plead standing. We suspect that remand would only undermine judicial economy by further prolonging a doomed cause. But even if Plaintiffs do file a new complaint, the District of Nevada, like many district courts, anticipates that related cases ought to be heard by the same judge and provides for that possibility. *See* D. Nev. LR 42-1(a) (requiring parties to file notice of related actions "whether active or terminated" and providing that "the assigned judges will determine whether the actions will be assigned to a single district judge"). The district court would not, then, be writing on a blank slate, as the dissent suggests.

Accordingly, based on the record as a whole—including the failure to grant leave to amend and the clerk's immediate entry of final judgment—we conclude that the district court intended its order granting the FTC's motion to dismiss for lack of subject matter jurisdiction to be final. Of course, "[i]t would always be helpful if district courts made their

---

(alterations, quotation marks, and citations omitted). The plaintiffs' request to correct any technical pleading defects upon remand is, at most, a "gesture[]" in favor of remand for leave to amend. *Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1135 n.12 (9th Cir. 2021). We do not consider it sufficient to preserve the argument that remand for leave to amend would be appropriate relief from this court.

intentions . . . both plain and explicit." *WMX Techs.*, 104 F.3d at 1136. Nonetheless, we are satisfied that we have appellate jurisdiction here and, accordingly, turn next to the question of standing.

## III.    Standing

We review a district court's dismissal under Rule 12(b)(1) for lack of standing de novo. *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1049 (9th Cir. 2019); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). "Each element of standing 'must be supported with the manner and degree of evidence required at the successive stages of the litigation.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (ellipsis omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "At the pleading stage, general factual allegations of injury . . . may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (brackets omitted) (quoting *Lujan*, 504 U.S. at 561). In the context of a motion to dismiss, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012).

"Three elements form the '"irreducible constitutional minimum" of standing' to file suit in federal court." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo*, 578 U.S. at 338). "The injury in fact must constitute 'an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Lujan*, 504 U.S. at 560).

Intertwined with the injury-in-fact inquiry is the requirement that the case be ripe for review, which is "peculiarly a question of timing." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (citation omitted). "[I]n measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." *Id.* at 1139 (quotation marks and citation omitted).

Where, as here, Plaintiffs seek judicial intervention before the government has enforced the challenged policy against them, they bear the burden of showing "a credible threat of enforcement." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). "[G]eneralized threats of prosecution do not confer constitutional ripeness." *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018) (quoting *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1154 (9th Cir. 2017)). "Rather, there must be 'a *genuine* threat of *imminent* prosecution.'" *Id.* (quoting *Bishop Paiute Tribe*, 863 F.3d at 1154). We look to three factors[8] to determine whether plaintiffs have shown such a credible threat: "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past

---

[8] Other cases have additionally looked to "whether the challenged law is inapplicable to the plaintiffs." *Lopez*, 630 F.3d at 786. Because the FTC does not contend that the 2016 letter or the Rule is inapplicable to Plaintiffs, this factor is irrelevant here.

prosecution or enforcement under the challenged statute."[9] *Id.* (quoting *Bishop Paiute Tribe*, 863 F.3d at 1154).

Plaintiffs have not sufficiently alleged a constitutional injury in fact. Applying the first factor, the complaint utterly lacks, let alone states "with some degree of concrete detail," an allegation that Plaintiffs "intend to violate" the Rule as interpreted by the 2016 letter. *Lopez*, 630 F.3d at 786. The complaint fails to state to what extent Plaintiffs currently use soundboard technology, to what extent they use it in connection with charitable activity, and whether they plan to use it in the future. They have not, in short, provided any information about the "when, to whom, where, or under what circumstances" they would use soundboard technology but for the challenged policies. *Id.* at 787 (quoting *Thomas*, 220 F.3d at 1139). "Without these kinds of details, a court is left with mere '"some day" intentions,' which 'do not support a finding of the "actual or imminent" injury that our

---

**[9]** Plaintiffs suggest that the Supreme Court's decision in *Susan B. Anthony List v. Driehaus* abrogated the Ninth Circuit's three-part test. Not so. We have continued to apply this test after *Susan B. Anthony List* as a means of determining whether a purported injury meets the Supreme Court's "credible threat" requirement. *See, e.g.*, *Clark*, 899 F.3d at 813 (concluding that "these three factors are absent in the present case" and that accordingly, "[t]he [plaintiffs'] claims bear no resemblance to the prototypical pre-enforcement challenge case, in which 'the threatened enforcement of a law' against a plaintiff is imminent." (quoting *Susan B. Anthony List*, 573 U.S. at 158)). The cases to which Plaintiffs point as other means of establishing standing pertain instead to the question of whether an agency action is "final" for purposes of APA review—an additional, not alternative, requirement for justiciability of the APA claims. *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016); *Sackett v. EPA*, 566 U.S. 120, 126 (2012); *Frozen Food Express v. United States*, 351 U.S. 40, 44 (1956).

cases require.'" *Id.* at 787–88 (quoting *Thomas*, 220 F.3d at 1140).

At most, the complaint alleges that Plaintiffs are part of an industry that has collectively "invested millions of dollars and spent countless hours in training and development" and that the industry is now "whipsawed between abandoning its business and laying off thousands of workers to whom they have paid good salaries for years and facing potentially ruinous enforcement actions and penalties." These allegations are "not sufficiently concrete to meet even the minimum injury in fact threshold." *Lopez*, 630 F.3d at 790. For one, it is not clear on which side of the whipsaw Plaintiffs fell since the letter's issuance, for they have disclaimed using soundboard technology in a manner inconsistent with the 2016 letter but failed to allege that they *would* use soundboard technology but for the 2016 letter. For another, these allegations do not show that these Plaintiffs have "outlined a concrete plan to engage in proscribed conduct." *Clark*, 899 F.3d at 813. Even a "Hobson's choice" must be "particularized" and "imminent." *Id.* at 812 (quoting *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009)).

The other pre-enforcement challenge factors weigh against standing, too. Plaintiffs have not pleaded any facts showing past FTC enforcement against them or any future warning of prosecution. Their complaint merely says that they face "serious civil penalties" from violation of the challenged policies, without any indication that such penalties are imminent or realistic.[10] This conclusory

---

[10] Plaintiffs argue that since their complaint was filed, the FTC subsequently brought an action against fourteen defendants for violating the Rule by using soundboard, which makes the threat of enforcement

assertion "fail[s] to show a reasonable likelihood that the government will enforce the challenged law against them." *Lopez*, 630 F.3d at 786. To the extent that Plaintiffs have already chilled their speech even in the absence of FTC involvement, "self-censorship alone is insufficient to show injury." *Id.* at 792.

Accordingly, Plaintiffs have not alleged a "credible threat of enforcement" required to establish constitutional standing, *Susan B. Anthony List*, 573 U.S. at 161, and the district court did not err by dismissing the complaint.

## IV. Conclusion

We have jurisdiction over this appeal. We affirm the district court's dismissal for lack of subject matter jurisdiction based on Plaintiffs' failure to adequately plead Article III standing.

**AFFIRMED.**

---

"indisputable." They have suggested (at least implicitly) that we take judicial notice of this litigation, but we decline to do so. The FTC's enforcement action against other, unrelated parties does not necessarily make the threat against these Plaintiffs credible. On this record, it is impossible to tell whether Plaintiffs are "similarly situated" to the parties against whom the enforcement action was brought such that the action "cuts in favor of a conclusion that a threat is specific and credible." *Lopez*, 630 F.3d at 786–87. If Plaintiffs file a new action with a revised complaint, we leave it to the district court to determine in the first instance to what extent other enforcement actions support Plaintiffs' standing.

M. SMITH, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that, as the complaint stands now, Plaintiffs lack Article III standing to bring this pre-enforcement challenge because they did not allege that they have a concrete intention to engage in conduct that is prohibited by the FTC staff's interpretation of the Telemarketing Sales Rule in its 2016 opinion letter. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). Plaintiffs' briefing arguably implies that they wish to use soundboard technology to communicate with first-time donors to charitable organizations, but they do not identify any concrete plans to do so, and this intention, if it exists, is not evident from the complaint. Therefore, Plaintiffs did not adequately allege standing.

But, as the district court recognized, "the defect in plaintiffs' complaint may be cured by amendment." Even so, rather than expressly granting or denying leave to amend, the court stated only that "the court dismisses plaintiffs' claim without prejudice." Although it is possible the district court intended the dismissal without prejudice to grant leave to amend, I agree with the majority that the best interpretation of the district court's order is that it implicitly denied leave to amend.[1]

Having reached that conclusion, I part ways with the majority because I believe we should remand with instructions for the district court to grant Plaintiffs leave to amend. For at least the past sixty years, we have held that

---

[1] I agree with the majority that we therefore have jurisdiction over Plaintiffs' appeal.

district courts must grant leave to amend if the defects in the complaint may be cured, even if the plaintiff does not request it. *See Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962); *see also Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile."). This rule applies equally when the district court dismisses a complaint for lack of subject matter jurisdiction. *See Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1084 (9th Cir. 2014) ("Because the district court did not conclude that any amendment would be futile, it should have dismissed the initial complaint with leave for Carolina to amend it to correct, as far as possible, the defective jurisdictional allegations."). Further, an "outright refusal to grant the leave without any justifying reason appearing for the denial" is an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, the district court abused its discretion because it expressly acknowledged that "the defect in plaintiffs' complaint may be cured by amendment," but then nevertheless denied leave to amend without offering any justification.

The majority appears to agree that the district court abused its discretion, but it nevertheless declines to instruct the district court to grant leave to amend because it contends that Plaintiffs did not argue on appeal that they are entitled to leave to amend. *See* Maj. Op. at 14. I respectfully disagree. In their opening brief, Plaintiffs argue as follows:

> Appellants contend that their original complaint meets the constitutional standing requirements in its present form. *To the extent that this Court disagrees, Appellants*

> *respectfully request that the Court find there are no fatal pleading defects and allow Appellants to correct any technical pleading defects upon remand.*
>
> In addition, Appellants should be permitted to amend their complaint to add a new arbitrary and capricious claim under 5 U.S.C. § 706(2)(A) . . . .

(emphasis added). As this language illustrates, Plaintiffs made three distinct arguments: (1) their initial complaint adequately alleges standing, (2) if we disagree, we should instruct the district court to grant leave to amend to address any deficiencies in the standing allegations, and (3) we should grant leave to amend to add a new claim.[2]

Plaintiffs could hardly have been clearer. This is not a circumstance, like those in the cases the majority cites, where an appellant attempts to slip in an entirely separate and undeveloped substantive claim, leaving us to "manufacture arguments for [the] appellant," *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiffs requested leave to amend to address the standing issues, there was nothing else left to say. I suppose that, in an abundance of caution, Plaintiffs could have cited to one of

---

[2] The majority observes in a footnote that Plaintiffs' request for leave to amend "comes amidst a section focused entirely on remand *for the addition of an entirely new claim.*" Maj. Op. at 14 n.7. To the extent the majority suggests that Plaintiffs requested leave to amend only to add the new claim and did not request leave to amend to address the standing deficiencies, the majority's interpretation is inconsistent with the plain text of Plaintiffs' brief. Plaintiffs stated expressly that their request for leave to add the new claim is "*[i]n addition*" to their request for leave to cure the standing deficiencies. (emphasis added).

our numerous opinions holding that they are entitled to leave to amend, but it makes little sense to refuse to correct the district court's error on that basis here, where the law is clear, and where the majority has already identified authority showing Plaintiffs are entitled to relief. *See* Maj. Op. at 14.

Further, even if Plaintiffs did not adequately raise the district court's failure to grant leave to amend in their opening brief, our waiver rule is simply a "rule of practice," not a jurisdictional rule, *Krause v. Sacramento Inn*, 479 F.2d 988, 989 (9th Cir. 1973), so we can exercise our discretion to overlook it when a "detailed discussion" of an argument "is unnecessary" and the appellee is not prejudiced, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 940 n.5 (9th Cir. 2008). I would do so here.

The likely consequence of the majority's refusal to remand with instructions to grant leave to amend will be to burden our colleagues in the District of Nevada. Everyone agrees that Plaintiffs may amend their complaint, the only dispute is about whether they may do so in this case or whether they must file an entirely separate action to do so. If Plaintiffs were to file a separate action, and if it were to be assigned randomly, as most are, it would likely to be assigned to a different judge.[3] That judge would then need to review the complaint, review all of the proceedings in this case, and then address any motion to dismiss. It is far more efficient for Judge Mahan, who is already familiar with this case, to assess the propriety of any amendment. As we have

---

[3] There are seven active district judges in the district of Nevada, meaning there is at least an 86% (6/7) chance any new action would be assigned to a different judge. Several senior judges continue to serve in the District of Nevada, so the chances of the case being assigned to a different judge are likely even higher.

recognized in the past, "forcing [plaintiffs] with deficient but curable complaints to file new actions, rather than simply amending their initial complaints" only serves to "undermine the goal of judicial economy." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The majority suggests that the parties could have any new case transferred to Judge Mahan pursuant to District of Nevada Local Rule 42-1. *See* Maj. Op. at 15. Even assuming that is correct, that process is far less efficient than following our ordinary practice of remanding with instructions to grant leave to amend. Under our traditional approach, any amended complaint would be in front of Judge Mahan automatically. Under the majority's approach, Plaintiffs must open an entirely separate action, and then a party must file a notice of related cases in both actions explaining why assignment to Judge Mahan would be desirable. *See* D. Nev. LR 42-1. The "assigned judges" must then determine whether to transfer the new case. *Id.* These are exactly the kinds of inefficiencies we had in mind in *Lopez*. Thus, even if the majority is correct that any amended complaint would ultimately end up before Judge Mahan, the majority's approach still imposes unnecessary burdens on the litigants and the district court.

Next, the majority "suspect[s]" that although Plaintiffs requested leave to amend, they would not attempt to amend their complaint if we were to remand with instructions to grant leave to amend, so doing so would only "further prolong[] a doomed cause." Maj. Op. at 15. This is a curious argument. As an initial matter, it would be odd for Plaintiffs to request leave to amend if they did not intend to amend the complaint. But even if the majority were correct—if, perhaps, Plaintiffs were to change their minds after reading our opinion—remanding with instructions to grant leave to

amend would not materially prolong the litigation. If on remand Plaintiffs were to decide not to amend the complaint, they could promptly notify the district court, and the case would be over. *See Lopez v. City of Needles*, 95 F.3d 20, 22 (9th Cir. 1996) (referring to "a notice of intent not to file an amended complaint"). And presumably the district court would impose a deadline for filing an amended complaint, so even if Plaintiffs were not inclined to respond, the district court could close the case after providing a reasonable opportunity to do so. In light of our longstanding instruction to grant leave to amend even if a plaintiff does not request it, district courts have extensive experience managing litigants who choose not to amend their complaints, and I am confident that the district court is well-equipped to prevent the litigation from stretching on interminably.

For the foregoing reasons, I would remand with instructions for the district court to grant leave to amend.